**IN THE UNITED STATES DISTRICT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LEON CHAMBERS, on behalf of himself and all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>ANHEUSER-BUSCH EMPLOYEES' CREDIT UNION d/b/a AMERICAN EAGLE CREDIT UNION,<br>Serve:  Robert McKay, President and CEO<br>        Anheuser-Busch Employees' Credit Union<br>        423 Lynch<br>        St. Louis, MO  63118<br><br>        Defendant. | Civil Action No:  3:19-cv-842 |

---

### COMPLAINT AND JURY DEMAND

---

### <u>CLASS ACTION COMPLAINT</u>

Plaintiff, Leon Chambers, individually and on behalf of the class of persons preliminarily defined below, makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Defendant Anheuser-Busch Employees' Credit Union d/b/a American Eagle Credit Union ("AECU") arising from its routine assessment and collection of multiple $29 Nonsufficient Funds Fees ("NSF Fees") on a single item, which is deceptive and violative of its account agreement attached hereto as <u>Exhibit A</u> (the "Account Agreement"), its fee schedule attached hereto as <u>Exhibit B</u> (the "Fee Schedule"), and its overdraft policy attached hereto as <u>Exhibit C</u> (the "Overdraft Policy" together with the Agreement and the Fee Schedule, the "Agreement").

2.     AECU misleadingly and deceptively misrepresents its practices with respect to the assessment and collection of NSF Fees, including in the Agreement. AECU also omits material facts pertaining to this practice, including in the Agreement.

3.     This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief for breach of contract, breach of the covenant of good faith and fair dealing and unjust enrichment.

4.     Defendant's improper scheme to extract funds from account holders has victimized Plaintiff and hundreds of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in these schemes and will continue to cause substantial injury to its consumers.

## PARTIES

5.     Plaintiff Leon Chambers is an individual and resident of O'Fallon, Illinois.

6.     Defendant AECU is a credit union with 29 branches nationwide. AECU's headquarters and principal place of business are in St. Louis, Missouri. AECU provides retail banking services to its members, including Plaintiff and members of the Class. AECU has nearly $1.8 billion in assets and more than 132,000 members.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than the Defendant.

8.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant is subject to personal jurisdiction here and conducts business in this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## BACKGROUND FACTS

I.     AECU CHARGES MULTIPLE NSF FEES ON THE SAME ITEM IN BREACH OF ITS ACCOUNT CONTRACTS.

9.     The Agreement states that when an AECU member attempts a transaction but does not have sufficient funds to cover it, AECU may charge a $29 NSF Fee per item. *See* Ex. A at 4; Ex. B.

10.     However, AECU regularly assesses two or more NSF Fees on the *same* transaction or item.

3

11.     Mr. Chambers does not dispute AECU's right to reject an item and charge a single NSF Fee, but AECU unlawfully maximizes its already profitable NSF Fees by using deceptive practices that also violate the express terms of the Agreement.

12.     Specifically, AECU unlawfully assesses *multiple* NSF Fees on a single ACH item.

13.     Unbeknownst to consumers, each time AECU reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, AECU chooses to treat it as a new and unique item that is subject to yet another NSF Fee. But the Agreement never discloses that this counterintuitive and deceptive result could be possible and, in fact, suggests the opposite.

14.     The Fee Schedule indicates that only a *single* NSF Fee will be charged per "item," however many times that item is reprocessed with no request from the customer to do so. *See* Ex. B. An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes.

15.     This abusive practice is not universal in the financial services industry.  Indeed, major financial institutions like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee (also known as a non-sufficient or insufficient funds fee) on the same item when it is reprocessed.  Instead, Chase charges one NSF Fee even if an item is reprocessed for payment multiple times.

16.     The Agreement never discloses this practice. To the contrary, the Agreement indicates AECU will only charge a single NSF Fee per item.

*i.   Plaintiff's Experience.*

17.     In support of his claim, Mr. Chambers offers an example of NSF Fees that should not have been assessed against his checking account. As alleged below, AECU: (a) reprocessed a previously declined item for which it assessed an NSF Fee; and (b) charged another NSF Fee upon reprocessing.

18.     On November 27, 2017, AECU assessed Plaintiff a $29 NSF Fee on an item due to insufficient funds.  On November 30, 2017, unbeknownst to Plaintiff and without his request to AECU to retry the item, AECU processed the same transaction, and again AECU rejected the transaction due to insufficient funds and charged Plaintiff *another* $29 NSF Fee.

19.     On December 1, 2017, AECU rejected payment of an item due to insufficient funds and charged Plaintiff a $29 NSF Fee. On that same day, unbeknownst to Plaintiff and without his request to AECU to retry the item, AECU processed the same transaction, and again AECU rejected the transaction due to insufficient funds and charged Plaintiff *another* $29 NSF Fee. On December 7, 2017, AECU processed the same transaction *yet again*, and again AECU rejected the transaction due to insufficient funds and charged Plaintiff *another* $29 NSF Fee. *In total, AECU charged Plaintiff $87 in NSF Fees for processing the same item.*

20.     On June 11, 2018, AECU assessed Plaintiff a $29 NSF Fee on an item due to insufficient funds. On June 15, 2017, unbeknownst to Plaintiff and without his request to AECU to retry the item, AECU processed the same transaction, and charged Plaintiff *another* $29 NSF Fee.

21.     On October 29, 2018, AECU assessed Plaintiff a $29 NSF Fee on an item due to insufficient funds. That same day, unbeknownst to Plaintiff and without his request to AECU to

retry the item, AECU processed the same transaction, and charged Plaintiff *another* $29 NSF Fee.

22.      On November 2, 2018, AECU assessed Plaintiff a $29 NSF Fee on an item due to insufficient funds. That same day, unbeknownst to Plaintiff and without his request to AECU to retry the item, AECU processed the same transaction, and charged Plaintiff *another* $29 NSF Fee.

*23.      In total, AECU charged Plaintiff $319 to process five single items.*

24.      Plaintiff understood all of these payments to be a single item or transaction as is laid out in the Agreement, capable at most of receiving a single NSF Fee (if AECU returned it) or a single overdraft fee (if AECU paid it).

25.      AECU itself also understood the transactions to be single transactions, and its systems categorized them as such. Indeed, on Plaintiff's account statement, AECU identified subsequent attempts to debit the transactions as a "RETRY PYMT."

*ii.      The Imposition of Multiple NSF Fees on a Single Item Violates AECU's Express Promises and Representations.*

26.      The Agreement provides the general terms of Mr. Chambers's relationship with AECU and makes explicit promises and representations regarding how items will be processed, as well as when NSF Fees may be assessed.

27.      The Account Agreement states:

> [i]f another transaction is presented for payment in an amount greater than the funds remaining after the deduction of the temporary hold amount, ***that transaction*** will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it. Ex. A at 4 (emphasis added).

28.      The Fee Schedule states:

"Returned NSF/UCF check or ACH item: $29/***item***." Ex. B (emphasis added).

29.     The Overdraft Policy states that if the customer's balance is insufficient on a given day, AECU "may return ***the item***." Ex. C at 2 (emphasis added).

30.     In sum, the Agreement promises that NSF Fees will only be assessed once per "item" or "transaction" when in fact AECU regularly charges two or more NSF Fees per "item" or "transaction" even though a customer only requested the payment or transfer once.

31.     The same "transaction," most importantly here ACH withdrawals, on an account cannot conceivably become new transactions each time they are rejected for payment then reprocessed, especially when—as here—Mr. Chambers took no action to reprocess them.

32.     Even if AECU reprocesses an instruction for payment, it is still the same "transaction." AECU's reprocessing is simply another attempt to effectuate an accountholder's original request for payment.

33.     The disclosures described above never discuss a circumstance where AECU may assess multiple NSF Fees for a single check or item that was returned for insufficient funds and later reprocessed one or more times and returned again.

34.     In sum, AECU promises that one $29 NSF Fee will be assessed per "transaction" or "item," and that term must mean all iterations of the same request for payment.  As such, AECU breached the Agreement when it charged more than one NSF Fee per item.

35.     Reasonable consumers understand any given authorization for payment to be one, singular "check or item" as those terms are used in the Agreement.

36.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same

7

"transaction" or "item," which AECU will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does AECU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do AECU customers ever agree to such fee arrangements.

37.     Customers reasonably understand, based on the language of the Agreement, that AECU's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item.

38.     Banks and credit unions like AECU that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something AECU never did.

39.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as AECU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*First Citizens Bank Deposit Agreement*, First Citizens Bank,
https://www.firstcitizens.com/personal/banking/deposit-agreement (last visited July 5, 2019)
(emphasis added).

40.     First Hawaiian Bank engages in the same abusive practices as AECU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE**

**CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf  (last visited July 5, 2019) (emphasis added).

41.     Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

42.     First Financial Bank in Ohio, aware of the commonsense meaning of "item," clarifies the meaning of that term to its accountholders:

Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

*Special Handling/Electronic Banking Disclosures of Charges*, First Financial Bank (Aug. 2018),            https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf.

43.     AECU provides no such disclosures, and in so doing, deceives its accountholders.

**B.  The Imposition of Multiple NSF Fees on a Single Item Breaches AECU's Duty of Good Faith and Fair Dealing.**

44.     Pursuant to Illinois law, a duty of good faith and fair dealing is imposed on parties in a superior position.  Banks and credit unions have a superior vantage point when offering accountholders contracts of adhesion in the form of the Agreement, the terms of which are

sometimes, as here, not readily discernable to a layperson such as Mr. Chambers and other accountholders. If a contract is ambiguous, then a duty to act in good faith will be imposed. Indeed, AECU has a duty to honor transaction requests in a way that is fair to Mr. Chambers and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the accountholder.

45.    Here—in the adhesion agreements AECU foisted on Plaintiff and its other customers—AECU has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, AECU abuses that discretion by taking money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

46.    When AECU charges multiple NSF Fees, AECU does not act in good faith by defining the meaning of "item" and "transaction" in an unreasonable way that violates common sense and reasonable consumer expectations.  AECU sets the meaning of that term in a way that directly causes more NSF Fees.

47.    In addition, AECU acts to the prejudice of Mr. Chambers and its other customers when it reprocesses an item when it knows a customer's account lacks funds and then charges additional NSF Fees on a single item. Further, AECU abuses its superior bargaining power over accountholders and their accounts and acts contrary to their reasonable expectations under the Agreement. This is a breach of AECU's implied duty of good faith and fair dealing.

48.     It was bad faith and totally outside of Mr. Chambers's and other accountholders' reasonable expectations for AECU to assess more than one NSF Fee for a single ACH transaction.

49.     When AECU charges multiple NSF Fees, it uses its discretion to define contract terms in an unreasonable way that violates common sense and reasonable consumer expectations.  AECU uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

50.     Moreover, AECU provides itself discretion to refuse to reprocess items that are initially rejected.  It abuses that discretion when it repeatedly reprocesses items and charges NSF Fees each time.

## <u>CLASS ACTION ALLEGATIONS</u>

51.     <u>Description of the Class</u>: Plaintiff brings this class action on behalf of himself and class of persons ("the Class") defined as follows:

> All consumers who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item on an AECU checking account (the "National Multiple NSF Class")

52.     Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

53.     The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as AECU remedies the conduct complained of herein.

54.     <u>Numerosity</u>: The members of the proposed Class are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Class are unknown at this time and can be ascertained only through appropriate discovery. Plaintiff estimates the number of members in the Class to be in the thousands.

55.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

A.     Whether AECU charged multiple NSF Fees on a single transaction;

B.     Whether AECU breached the covenant of good faith and fair dealing;

C.     Whether AECU unjustly enriched itself at the expense of Plaintiff and the members of the Class.

D.     The proper method or methods by which to measure damages; and

E.     The declaratory and injunctive relief to which the Class is entitled.

56.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by AECU's actions.

57.     <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

58.     <u>Superiority of Class Action</u>: Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

59.     <u>Risk of Inconsistent or Varying Adjudication</u>: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for AECU as the party opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

60.     <u>Action Generally Applicable to Class as a Whole</u>: AECU, as the party opposing the Class, has acted or refused to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I
## BREACH OF CONTRACT
### (On behalf of Plaintiff and the Class)

61.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

62.     Plaintiff and AECU have contracted for bank account deposit, checking, and debit card services.

63.     Similarly, members of the Class and AECU have contracted for bank account deposit, checking, and debit card services.

64.     AECU misconstrued its true NSF Fee practices and breached the express terms of its customer contracts.

65.     No contract provision authorizes AECU to charge multiple NSF Fees on a single item or transaction.

66.     AECU breached the terms of its customer contracts by charging multiple NSF Fees on a single item or transaction.

67.     Plaintiff and members of the Class have performed all or substantially all of the obligations imposed on them under AECU's customer contracts.

68.     Plaintiff and members of the Class have sustained damages as a result of AECU's breach of its customer contracts.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On behalf of Plaintiff and the Class)

69.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

70.     Plaintiff has contracted with AECU for bank account deposit, checking, and debit card services.

71.     Similarly, members of the Class and AECU have contracted for bank account deposit, checking, and debit card services.

72.     Illinois imposes a duty of good faith and fair dealing on contracts between credit unions and their members because credit unions are inherently in a superior position to their checking account holders because, from a superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

73.     AECU abuses its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging multiple NSF Fees on a single item. This is an abuse of the power that AECU has over Plaintiff and his bank account, is contrary to Plaintiff's reasonable expectations under the Agreement, and breaches AECU's implied covenant to engage in fair dealing and act in good faith.

74.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit

of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

75.    AECU has breached the covenant of good faith and fair dealing in its customer contracts through its policies and practices as alleged herein.

76.    Plaintiff and members of the Class have performed all or substantially all of the obligations imposed on them under AECU's customer contracts.

77.    Plaintiff and members of the Class have sustained damages as a result of AECU's breach of the covenant of good faith and fair dealing.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

78.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

79.    Plaintiff and AECU have contracted for bank account deposit, checking, and debit card services.

80.    Similarly, members of the Class and AECU have contracted for bank account deposit, checking, and debit card services.

81.    AECU has unjustly retained a benefit in the form NSF Fees to Plaintiff's detriment.

82.    AECU has retained this benefit through its fee maximization scheme, and such retention violates fundamental principles of justice, equity, and good conscience.

83.     AECU should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Class and should be required to make restitution to Plaintiff and members of the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on his own behalf and on behalf of the Class respectfully request that the Court:

(a)     Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

(b)     Award Plaintiff and the Class actual, statutory, and punitive damages in an amount to be proven at trial;

(c)     Award Plaintiff and the Class restitution in an amount to be proven at trial;

(d)     Award Plaintiff and the Class pre- and post- judgment interest in the amount permitted by law;

(e)     Award Plaintiff and the Class attorneys' fees and costs as permitted by law;

(f)     Declare AECU's practices outlined herein to be unlawful and a breach of contract;

(g)     Enjoin AECU from engaging in the practices outlined herein;

(h)     Grant Plaintiff and the Class a trial by jury; and

(i)     Grant such other relief as the Court deems just and proper.

Respectfully submitted this 2nd day of August, 2019.

*s/James J. Rosemergy*
James J. Rosemergy #06257973
John F. Garvey
CAREY DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO  63105
Telephone:  314-725-7700
Facsimile:  314-678-3401
jrosemergy@careydanis.com
jgarvey@careydanis.com

Lynn A. Toops
Vess A. Miller
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
Martin F. Schubert*
BRANSTETTER, STRANCH
   & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@bsjfirm.com

Christopher D. Jennings*
THE JOHNSON FIRM
2226 Cottondale Lane, Suite 210
Little Rock, AR 72202
Phone: (501) 372-1300
chris@yourattorney.com

*Pro Hac Vice Motions to be Submitted
Attorneys for Plaintiff and the putative Class*

**<u>Certificate of Service</u>**

The undersigned hereby certifies that the foregoing Complaint has been filed by using the Court's CM/ECF system on this 2nd day of August, 2019.

_/s/James J. Rosemergy_