# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LEON CHAMBERS**, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**TOGETHER CREDIT UNION**,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 3:15-cv-00842-SPM<br>)<br>)<br>)<br>) |

# MEMORANDUM IN SUPPORT OF
# PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
# OF CLASS ACTION SETTLEMENT

Introduction ........................................................................................................... 1
Statement of Facts................................................................................................. 1
    I.     The litigation, motion practice, and discovery. ...................................... 1
    II.    The Settlement and its terms. ............................................................... 3
Legal Standard for Preliminary Approval and Notice ................................................ 4
    I.     In the "preliminary approval" stage, the Court determines only whether it "will likely be able to" grant final approval and to certify a class for judgment. ................................................................................. 5
         A.    The Court evaluates whether it "will likely be able to" grant final approval by preliminarily determining whether the settlement appears "fair, reasonable, and adequate." ................. 5
         B.    The Court evaluates whether it "will likely be able to" certify the class for purposes of entering judgment by determining whether the class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). .................................................... 6
    II.    Once a court grants "preliminary approval," it must approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing. ............................................. 8
Discussion ............................................................................................................. 9
    I.     The Court should grant preliminary approval to the Settlement. .......... 9
         A.    The Court "will likely be able to" grant final approval to the Settlement because the Settlement is a fair, reasonable, and adequate compromise. .............................................................. 9
         B.    The Court "will likely be able to" certify the class for judgment because the class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). ................. 11
    II.    The Court should approve the proposed notice plan, set the deadlines for opt-outs and objections, and set a final approval hearing date for approximately 110 days after preliminary approval. ........................... 13
Proposed Schedule of Deadlines............................................................................ 13
Conclusion ........................................................................................................... 14

# INTRODUCTION

After engaging in motion practice over the legal claims; gathering written and document discovery, as well as taking depositions; having an expert compute damages; and participating in months of negotiations, the parties reached the proposed class action Settlement Agreement and Release (the "Settlement") that is now before the Court for preliminary approval under Federal Rule of Civil Procedure 23(e)(1). ECF No. 73-1. The Settlement, which was the result of hard-fought, arm's-length negotiations, provides a cash Settlement Fund of $525,000 for the proposed Class. Toops Decl. ¶ 8. The Settlement represents a recovery of over 59% of the damages projected by the expert as the best possible day in court for the Class, and the Settlement monies will be distributed to the members of the Class without need for them to complete a claim form or take any additional steps. The Settlement represents an excellent result for the classes in this litigation, and the Court should grant preliminary approval to the Settlement. Granting preliminary approval will allow notice of the Settlement to be distributed to the Class and for a hearing to be scheduled to consider whether to grant final approval.

# STATEMENT OF FACTS

**I.    The litigation, motion practice, and discovery.**

Plaintiff Leon Chambers filed this class action against Anheuser-Busch Employees' Credit Union d/b/a American Eagle Credit Union ("Defendant" or the "Credit Union") on August 2, 2019,[1] alleging the Credit Union violated its contract

---

[1] The Credit Union changed its name to Together Credit Union on Nov. 12, 2019.

and its duty of good faith and fair dealing, and was unjustly enriched, by its practice of charging its members more than one $29 Nonsufficient Funds Fee ("NSF Fee") on the same item. Complaint and Jury Demand, ECF No. 1. Specifically, Plaintiff alleged that the Credit Union was permitted to charge only one NSF Fee when an item, such as an ACH transaction or check, was returned for nonsufficient funds, and that the Credit Union was not permitted to charge additional NSF Fees when a merchant later attempted to "retry" the same request for payment. *Id.*

On October 7, 2019, the Credit Union moved to dismiss the Complaint, arguing it was permitted to charge multiple NSF Fees on the same item. Def.'s Mot. to Dismiss Pl.'s Compl. for Failure to State a Claim, ECF No. 21. Plaintiff responded to the motion to dismiss, ECF No. 22, and over the course of several months, filed ten motions for leave to file supplemental authority. ECF Nos. 32, 34, 37, 40, 47, 52, 54–55, 58–59. Defendant responded to many of these motions. ECF Nos. 31, 38-39, 41, 51.

During this time period, the parties also engaged in discovery. Ex. A, Declaration of Lynn A. Toops in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Toops Decl.") ¶ 4. The Credit Union responded to interrogatories, requests for production, and requests for admission, and it produced several thousands of pages of documents. *Id.* On August 18, 2020, Plaintiff took a Rule 30(b)(6) deposition of three representatives of the Credit Union. *Id.* In addition, the Credit Union provided data that, when after

expert analysis, showed net potential damages of $885,541 for the period from January 2, 2015 to August 1, 2019. *Id.*

## II. The Settlement and its terms.

In conjunction with the litigation, and armed with this net potential damages figure, the parties engaged in settlement negotiations over the course of several months. *Id.* ¶ 5. After hard-fought, arm's-length negotiations, the parties reached an agreement in principle and informed the Court. *Id.*; Joint Notice of Settlement, ECF No. 66. Thereafter, the parties negotiated the detailed settlement agreement and exhibits, which they executed on January 8, 2021 and have presented to the Court for preliminary approval. *See* Motion, Ex. A; Toops Decl. ¶ 5.

Under the terms of the Settlement, the parties stipulate to the certification of a plaintiff class under Federal Rules of Civil Procedure 23(a) and 23(b)(3) for the purposes of settlement. *Id.* § 2. The class is defined as "those members of Defendant who were assessed Multiple NSF Fees," which means "nonsufficient funds fees that were assessed and not refunded from January 2, 2015 to August 1, 2019 for ACH and check transactions that had been re-submitted by a merchant after being rejected for insufficient funds." *Id.* § 1(p)–(q).

In exchange for a release of the claims in this action, the Settlement provides for the Credit Union to pay $525,000 into a Settlement Fund, for the benefit of the Class. *Id.* § 1(v). The Settlement provides for payments from the Settlement Fund of (a) up-to one-third in attorneys' fees, plus costs and expenses; (b) a service award to Plaintiff of up to $7,500; (c) reasonable costs of notice and administration of the settlement to the Settlement Administrator; (d) payment to the expert to determine

3

payouts from the Net Settlement Fund, not to exceed $10,000; and (d) distribution of the Net Settlement Fund to the members of the Class on a *pro rata* basis based on the amount of Multiple NSF Fees charged net of any amounts owed by Class members to Defendant. *Id.* § 7(d). Payments to Class members who are still members of the Credit Union will be made by credit directly to the member's account, while payments to former members of the Credit Union will be made by check mailed directly. *Id.* The payments will be without the need for any Class member to complete a claim form or take any other action. *Id.* The $525,000 Settlement Fund represents nearly 60% of the estimated $885,541 of total recoverable damages had the Class prevailed on class certification, at trial, and on appeal. *See* Toops Decl. ¶ 4. The Settlement also includes proposed forms of notice to the Class members, and periods to opt-out or object prior to a final approval hearing. *See* Motion, Ex. A, Settlement Agreement, at Exs. 1–2.

**LEGAL STANDARD FOR PRELIMINARY APPROVAL AND NOTICE**

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. In general, the approval process involves three stages: (1) notice of the settlement to the class after "preliminary approval" by the court; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing at which the court grants "final approval" upon finding that the settlement is "fair, reasonable, and adequate," after which judgment is entered, class members receive the benefits of the settlement, and the defendant receives the benefit of the settlement's release. Fed. R. Civ. P. 23(e)(1)–(2), (4)–(5).

I. **In the "preliminary approval" stage, the Court determines only whether it "will likely be able to" grant final approval and to certify a class for judgment.**

In deciding "preliminary approval" of a proposed settlement, a court evaluates two issues: (1) whether "the court will likely be able to" grant final approval to the settlement as a fair, reasonable, and adequate compromise; and (2) whether "the court will likely be able to" certify the class for purposes of entering judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B).

A. **The Court evaluates whether it "will likely be able to" grant final approval by preliminarily determining whether the settlement appears "fair, reasonable, and adequate."**

In making a preliminary determination whether a proposed class action settlement is "fair, reasonable, and adequate," Federal Rule of Civil Procedure 23(e)(2) requires a court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). In addition, courts in the Seventh Circuit also consider: (5) the strength of the plaintiffs' case compared to the amount of the defendants' settlement offer; (6) the opinion of experienced counsel; and (7) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In considering these factors, a court must bear in mind that "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Indeed, "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. Of Sch. Dir.'s of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public," and "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Id.*

**B.   The Court evaluates whether it "will likely be able to" certify the class for purposes of entering judgment by determining whether the class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).**

In deciding whether the court "will likely be able to certify" a class for entry of judgment on a proposed settlement, a court evaluates whether the proposed class meets the four requirements of Rule 23(a) and any one of the requirements of the subsections of Rule 23(b), which in this case is subsection 23(b)(3). *See, e.g., Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015).

Under Rule 23(a), the proposed class must satisfy the four requirements of numerosity, commonality, typicality, and adequacy. *Id.* Numerosity is satisfied where joinder of all class members is impracticable and is generally met when there

6

are as few as 40 or more class members. *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 378 (S.D. Ill. 2008) ("A class of more than 40 individuals raises a presumption that joinder is impracticable."). Commonality is met where there is at least a "single common question of law or fact" involved and where the class's claims "depend upon a common contention that is capable of class-wide resolution." *Bell*, 800 F.3d at 374. Typicality is met where "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). And "[t]he adequacy requirement is satisfied when the named representatives have 'a sufficient interest in the outcome of the case to ensure vigorous advocacy' and '[do] not have interests antagonistic to those of the class.'" *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 256 (S.D. Ill. 2015) (quoting *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D.Ill.2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010)).

Finally, the requirements of Rule 23(b)(3) are satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R. Civ. P. 23(b)(3). The "predominance requirement is satisfied when common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). And the superiority requirement is generally satisfied when a class action would aggregate many relatively small-value

7

individual claims into one case. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801-02 (7th Cir. 2012). Further, in the context of a settlement, a court need not consider manageability issues that might make a class trial complicated because a settlement resolves all the claims without a trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

II. **Once a court grants "preliminary approval," it must approve and direct notice to the class, set deadlines for class members to opt-out or object, and set a date for a final approval hearing.**

Upon the granting of preliminary approval, a court "must direct notice in a reasonable manner to all class members" to inform them of the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice may be given by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). After the time for objections and opt-out requests has passed, the Court then holds a hearing to consider whether to grant final approval,

8

taking into account any objections raised by class members and all other relevant factors. Fed. R. Civ. P. 23(e)(2).

## DISCUSSION

**I.  The Court should grant preliminary approval to the Settlement.**

Here, the Settlement represents a "fair, reasonable, and adequate" compromise of the proposed claims, which are uniform claims over standardized documents and practices of Defendant that are tailor-made for class certification. Therefore, the Court should grant preliminary approval under Rule 23(e)(1) and direct issuance of notice because "the court will likely be able to" grant final approval to the settlement and certify the Class for purposes of entering judgment on the Settlement. Fed. R. Civ. P. 23(e)(1)(B).

**A.  The Court "will likely be able to" grant final approval to the Settlement because the Settlement is a fair, reasonable, and adequate compromise.**

The Court "will likely be able to" grant final approval because the Settlement is fundamentally "fair, reasonable, and adequate," taking into account the Rule 23(e)(2) and caselaw factors.

First, the Class Representative and Class Counsel have adequately represented the Class by vigorously pursuing this litigation both through motion practice on the legal merits and through discovery of facts and potential damages. Fed. R. Civ. P. 23(e)(2)(A); Toops Decl. ¶ 4.

Second, the proposal was negotiated at arm's length by experienced counsel on both sides. Fed. R. Civ. P. 23(e)(2)(B); Toops Decl. ¶ 5.

9

Third, the proposal treats the Class members equitably as to one another because the Net Settlement Fund will be divided pro rata based on the number of Multiple NSF Fees each member was charged (net of amounts owed by Class members to Defendant) so, setting aside any such amounts owed, Class members who were harmed more will be paid more under the Settlement. Fed. R. Civ. P. 23(e)(2)(D); Settlement Agreement § 7(d)(v).

Fourth, the relief provided for by the Settlement is adequate, taking into account the relevant factors. The costs, risks, and delays of trial and appeal would have delayed any recovery for several years and would have risked the Class recovering nothing had this Court or an appellate court ruled against them on the pending motion to dismiss, a motion for class certification, a motion for summary judgment, at trial, or on appeal from a final judgment. Fed. R. Civ. P. 23(e)(2)(C)(i); Toops Decl. ¶ 6. The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted. Fed. R. Civ. P. 23(e)(2)(C)(ii); Settlement Agreement § 7(d)(v). Plaintiff will move the Court for attorneys' fees in accordance with the Settlement Agreement, which will only be paid and collected after Court approval. Fed. R. Civ. P. 23(e)(2)(C)(iii); Settlement Agreement § 7(d)(i). And there are no side agreements under Rule 23(e)(3) that need to be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv).

Fifth, while Plaintiff believes in the strength of his case, it was not without risk, yet the value of the Settlement is significant, amounting to nearly 60% of the

estimated potential damages had Plaintiff prevailed on every issue all the way through trial and appeal. *Synfuel Techs., Inc.*, 463 F.3d at 653; Toops Decl. ¶ 6.

Sixth, Class Counsel has experience litigating hundreds of bank fee class actions across the country, and Class Counsel believes this Settlement represents a fantastic result for the Class. *Synfuel Techs., Inc.*, 463 F.3d at 653; Toops Decl. ¶¶ 3, 6.

Seventh, although the litigation was not nearing trial, Plaintiff had completed significant discovery and had fully briefed the legal issues to be able to fairly evaluate the risks and value of the case for purposes of achieving a fair settlement. *Synfuel Techs., Inc.*, 463 F.3d at 653; Toops Decl. ¶ 4.

Thus, the Settlement can only be described as a "fair, reasonable, and adequate" compromise that warrants granting preliminary approval and issuing notice to the Class.

### B. The Court "will likely be able to" certify the class for judgment because the class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

Similarly, this case meets all the requirements of Rules 23(a) and 23(b)(3), such that the Court will "likely be able to" certify the Class for judgment on the Settlement.

The Class easily meets the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. Numerosity is met because there are thousands of Class members. *Cima*, 250 F.R.D. at 378 ("A class of more than 40 individuals raises a presumption that joinder is impracticable."). Commonality is met because all Class members share the "common question of law or fact" and

their claims "depend upon a common contention that is capable of class-wide resolution," namely whether Defendant's standard form customer contracts permitted it to uniformly assess Multiple NSF Fees. *Bell*, 800 F.3d at 374. Typicality is met because "the named representatives' claims have the same essential characteristics as the claims of the class at large" because, here, the Class Representative seeks to recover the same fees on the same theory as the Class members. *Muro*, 580 F.3d at 492. And similarly, "[t]he adequacy requirement is satisfied" because "the named representative[ ] ha[s] 'a sufficient interest in the outcome of the case to ensure vigorous advocacy' and '[does] not have interests antagonistic to those of the class.'" *Suchanek*, 311 F.R.D. at 256 (quoting *Saltzman*, 257 F.R.D. at 480 *aff'd*, 606 F.3d 391 (7th Cir. 2010)).

Finally, the "predominance" and "superiority" requirements of Rule 23(b)(3) are satisfied. Predominance is satisfied because "common questions represent a significant aspect of [this] case and . . . can be resolved for all members of a class in a single adjudication," as all of the claims depend on the issue of whether or not the Credit Union was permitted under its contract to charge the Class members Multiple NSF Fees. *Messner*, 669 F.3d at 815. And superiority is satisfied because a class settlement permits the relatively low-value claims ($29 per Multiple NSF Fee) to be adjudicated for thousands of Class members in one action without the need for the complexities of trial. *Butler*, 727 F.3d at 799; *Amchem Prods., Inc.*, 521 U.S. at 620. In addition, Defendant has stipulated for the purposes of settlement that the requirements of Rules 23(a) and 23(b)(3) are met.

Thus, the Court should certify the following Class for purposes of preliminary approval and notice.

**II. The Court should approve the proposed notice plan, set the deadlines for opt-outs and objections, and set a final approval hearing date for approximately 110 days after preliminary approval.**

As part of the preliminary approval order, the Court should also approve the proposed forms and manner of notice attached to the Settlement Agreement as Exhibits 1 and 2. *See* Motion, Ex. A. The notice constitutes the "best practicable notice" under the circumstances and is direct notice to each class member individually, either by email or mail. The long form of notice is based off of plain-English forms adopted by the Federal Judicial Center and informs the class members of all the required information under Federal Rule of Civil Procedure 23(c)(2)(B), including (i) the nature of the action; (ii) the classes; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The Settlement Administrator will provide the notice and report to class counsel who will in turn report to the Court on the effectiveness of the notice plan.

## PROPOSED SCHEDULE OF DEADLINES

The notice also provides deadlines for opt-outs and objections, and for the Court to schedule a final approval hearing after class members have had a chance to opt-out of, object to, or remain part of the Settlement. Plaintiff proposes the following schedule:

13

| Event | Time for Compliance |
|---|---|
| Deadline to Send Mail & E-Mail Notice | Within 30 days from entry of the Preliminary Approval Order |
| Deadline to file Motion for Award of Attorneys' Fees, Costs and Expenses, fees of the Settlement Administrator and the expert, and Service Award to Class Representative | 15 days after Notice is first sent |
| Deadline for Objections | 30 days after Notice is first sent |
| Deadline for Opt-Outs | 30 days after Notice is first sent |
| Deadline for Motion in Support of Final Approval | 45 days after Notice is first sent |
| Final Approval Hearing | 110 days after entry of the Preliminary Approval Order or as soon thereafter as the Court's schedule permits |

## CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval and enter the tendered Preliminary Approval Order.

Dated: February 1, 2021          Respectfully submitted,

                                           *s/Lynn A. Toops*
Lynn A. Toops
Vess A. Miller
COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Telephone: 317-636-6481
Facsimile: 317-636-2593
ltoops@cohenandmalad.com
vmiller@cohenandmalad.com

James J. Rosemergy
John F. Garvey
CAREY DANIS & LOWE
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: 314-725-7700
Facsimile: 314-678-3401
jrosemergy@careydanis.com
jgarvey@careydanis.com

J. Gerard Stranch, IV
Martin F. Schubert
BRANSTETTER, STRANCH
& JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
Facsimile: (615) 255-5419
gerards@bsjfirm.com
marty@bsjfirm.com

Jeffrey Kaliel
Sophia Gold
KALIEL PLLC
1875 Connecticut Avenue NW
10th Floor
Washington, DC 20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

15

Christopher D. Jennings
THE JOHNSON FIRM
610 President Clinton Ave.
Little Rock, AR 72201
Phone: (501) 372-1300
chris@yourattorney.com


*Counsel for Plaintiff and the Proposed Plaintiff Class*

16

## **CERTIFICATE OF SERVICE**

I certify that on February 1, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

                                          *s/Lynn A. Toops*
                                          Lynn A. Toops

COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone:  (317) 636-6481
Facsimile:  (317) 636-2593
ltoops@cohenandmalad.com